# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JASON BROWN, | ) |
|         Plaintiff, | ) ) ) Civil Action No. |
| vs. | ) ) Class Action |
| JAKKS PACIFIC, INC, STEPHEN G. BERMAN, ZHAO XIAOQIANG, CAROLE LEVINE, JOSHUA CASCADE, ALEXANDER SHOGHI, ANDREW AXELROD, and MATTHEW WINKLER | ) ) ) **JURY TRIAL DEMANDED** ) ) ) ) |
|         Defendants. | ) ) |

## VERIFIED STOCKHOLDER CLASS ACTION COMPLAINT

Plaintiff Jason Brown ("Plaintiff"), brings this action on behalf of himself and the stockholders of JAKKS Pacific, Inc. ("Jakks" or the "Company") against Jakks's board of directors (the "Board") to remedy wrongdoing perpetrated by the Board in connection with the stockholder vote at Jakks's June 12, 2020 annual meeting of stockholders (the "Annual Meeting").

## NATURE AND SUMMARY OF ACTION

1. On May 15, 2020, Jakks filed a Schedule 14A Proxy Statement (the "Proxy") with the U.S. Securities and Exchange Commission (the "SEC") in

connection with the Annual Meeting, where the Board sought stockholder approval of four proposals. There were 35,548,049 outstanding shares of Jakks's common stock entitled to vote at the Annual Meeting.

2. In the second proposal in the Proxy ("Proposal No. 2"), the Board sought stockholder approval of an amendment to the Amended and Restated Certificate of Incorporation of Jakks Pacific, Inc. (the "Certificate of Incorporation") that would authorize the Board to implement a reverse stock split of the Company's issued and outstanding common stock in a 1-for-10 ratio (the "Amendment").

3. The Board disclosed in the Proxy that approval of the Amendment required the affirmative vote of the holders of a majority of the Company's common stock outstanding and entitled to vote as of the record date. Accordingly, Proposal No. 2 required the affirmative vote of at least 17,774,025 shares to garner approval.

4. The Board also disclosed in the Proxy that, if stockholders failed to instruct their brokers on how to vote their shares at the Annual Meeting, brokers would not have the authority to cast an affirmative vote in favor of the Amendment. Accordingly, as represented in the Proxy, a stockholder could effectively vote against the Amendment by not providing any voting instructions to her broker.

5. Relying on the Board's representations in the Proxy, stockholders owning an aggregate of 6,840,338 shares effectively "voted" against the Amendment by not providing any voting instructions to their brokers.

6. Contrary to the representations appearing in the Proxy, the Board allowed these 6,840,338 votes to be cast by the brokers *in favor* of the Amendment. As a result, the Amendment was deemed approved when it would have failed if the votes were counted consistently with the Board's representations in the Proxy.

7. Although not required to do so, Plaintiff, in an effort to resolve this matter efficiently and without litigation, made a demand on the Board on June 19, 2020, noting the Board's failure to properly calculate the votes according to what stockholders were told in the Proxy. The Board elected not to address the problem.

8. On July 6, 2020, the Board filed the Amendment with the Secretary of State of Delaware, and proceeded to implement the reverse stock split that the stockholders purportedly "approved" at the Annual Meeting.

9. As a result of the above misconduct, Jakks stockholders have been damaged.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the parties are of diverse citizenship and the matter in controversy exceeds $75,000, exclusive of interests and costs.

11. Venue is proper in this District under 28 U.S.C. § 1391 because Jakks is incorporated in this District.

## THE PARTIES

12. Plaintiff is a Jakks stockholder and has held Jakks stock at all relevant times. Plaintiff is a citizen of Ohio.

13. Jakks is a Delaware corporation with its principal place of business located at 2951 28th Street, Santa Monica, CA 90405. Jakks's common stock trades on the NASDAQ Global Select Market under the trading symbol "JAKK."

14. Defendant Stephen G. Berman ("Berman") has served on the Board since January 1995. He is also currently the Company's Chief Executive Officer, Chairman of the Board, President, and Secretary. On information and belief, Berman is a citizen of California.

15. Defendant Zhao Xiaoqiang ("Xiaoqiang") has served on the Board since April 2017. On information and belief, Xiaoqiang is a citizen of China.

16. Defendant Carole Levine ("Levine") has served on the Board since August 2019. On information and belief, Levine is a citizen of California.

17. Defendant Joshua Cascade ("Cascade") has served on the Board since August 2019. On information and belief, Cascade is a citizen of Michigan.

18. Defendant Alexander Shoghi ("Shoghi") has served on the Board since December 2015. On information and belief, Shoghi is a citizen of Texas.

19. Defendant Andrew Axelrod ("Axelrod") has served on the Board since August 2019. On information and belief, Axelrod is a citizen of New York.

20. Defendant Matthew Winkler ("Winkler") has served on the Board since August 2019. On information and belief, Winkler is a citizen of New York.

21. Berman, Xiaoqiang, Levine, Cascade, Shoghi, Axelrod, and Winkler are herein referred to as the Individual Defendants and together, with Jakks, as the Defendants.

## FURTHER SUBSTANTIVE ALLEGATIONS

### *The Proxy*

22. On May 15, 2020, Jakks filed the Proxy with the SEC in connection with the Annual Meeting, which was held on June 12, 2020. According to the Proxy, there were 35,548,049 outstanding shares of Jakks's common stock entitled to vote at the Annual Meeting.

23. In the Proxy, the Board sought stockholder approval of the following four proposals (together, the "Proposals"):

(a) The election of five directors: Berman and Xiaoqiang as Class I directors, with their terms expiring at the Company's annual meeting of stockholders to be held in 2021; and Cascade, Levine, and Shoghi as Class II directors, with their terms expiring at the annual meeting of stockholders to be held in 2022 ("Proposal No. 1");

(b) An amendment to the Company's Amended and Restated Certificate of Incorporation that permits the Board to implement a reverse stock split of the

5

Company's outstanding common stock in the ratio of 1-for-10 (i.e., the Amendment);

(c) The ratification of the selection of BDO USA, LLP ("BDO") as the Company's principal independent auditors for its fiscal year ending December 31, 2020 ("Proposal No. 3"); and

(d) A non-binding, advisory vote on the compensation of the Company's named executive officers ("Proposal No. 4").

24. Pursuant to *8 Del. C.* § 242, approval of the Amendment in Proposal No. 2 required the affirmative vote of a majority of the Company's outstanding common stock. This was specifically acknowledged in the Proxy, which stated:

> Proposal No. 2 (reverse stock split) – With respect to the reverse stock split, under Delaware law, a reverse stock split is deemed to be an amendment of the Certificate of Incorporation. Accordingly, under Delaware law, the affirmative vote of the holders of a majority of the shares of our common stock outstanding and entitled to vote as of the record date for the Annual Meeting is required for the approval of Proposal 2.

25. Accordingly, of the 35,548,049 outstanding shares of Jakks's common stock entitled to vote at the Annual Meeting, the Amendment needed the affirmative vote of at least 17,774,025 shares in order to pass.

26. For all shares held in an account at a broker, bank, or other similar organization, the owner of the shares is considered the beneficial owner, with the shares being held by the financial institution in "street name." The organization

6

holding the account is considered the stockholder of record for voting purposes. A beneficial owner is entitled to instruct that organization on how to vote the shares held in the beneficial owner's account. Under New York Stock Exchange ("NYSE") Rule 452, if a stockholder fails to provide its broker with specific voting instructions, brokers would have the authority to vote on "routine" matters, but not "non-routine" matters. Under NYSE Rule 452, an amendment to a certificate of incorporation providing the Board with authority to implement a reverse stock split would typically be considered a "routine" matter.

27.     However, in the Proxy, Defendants represented to stockholders that Proposal No. 2 was a "non-routine" matter that brokers were "not permitted to vote" on at the Annual Meeting. As a result, the Proxy stated, if a stockholder failed to instruct their broker how to vote on Proposal No. 2, their shares would constitute "broker non-votes" for that proposal. As specifically noted on page 4 of the Proxy:

> If you hold shares beneficially in street name and do not provide your broker with voting instructions, your shares may constitute "broker non-votes." Broker non-votes occur on a matter when a broker is not permitted to vote on that matter without instructions from the beneficial owner and instructions are not given. These matters are referred to as "non-routine" matters. Each of Proposal No. 1 (election of directors), Proposal No. 2 (approval of reverse stock split) and Proposal No. 4 (advisory vote on executive competition) is a "non-routine" matter.

28.     These representations were repeated a second time on the following page. On page 5 of the Proxy, the Defendants stated again:

7

> Generally, if shares are held in street name, the beneficial owner of the shares is entitled to give voting instructions to the broker or nominee holding the shares. Since Proposal No. 1 (election of directors), Proposal No. 2 (reverse stock split) and Proposal No. 4 (advisory vote on executive compensation) are each considered "non-routine" matters, your broker will not be able to vote your shares of our common stock without specific instructions from you.

29. In other words, Defendants stated in the Proxy -- twice -- that if a stockholder that held in street name did not instruct her broker how to vote the shares for Proposal No. 2, then the shares could not be voted by brokers at the Annual Meeting and would instead constitute "broker non-votes."

30. Because Proposal No. 2 needed the affirmative vote of a majority of the Company's outstanding stock to be deemed approved, any shares not voted affirmatively in favor of Proposal No. 2, including "broker non-votes," would effectively constitute a vote against the Amendment. The Proxy expressly explained this:

> An abstention from voting will have the same effect as a vote "AGAINST" the approval of Proposal 2 (approval of reverse stock split)
>
> ***
>
> A "broker non-vote" will have the same effect as an abstention as described above.

8

31. Thus, a reasonable stockholder who wished to vote against the Amendment understood that she could do so by not providing voting instructions to her broker.

### *The Annual Meeting, the 8-K, and the Amendment to the Certificate of Incorporation*

32. The Company's stockholders voted on the Proposals at the Annual Meeting on June 12, 2020. On June 16, 2020, the Company filed an 8-K with the SEC (the "8-K"), and disclosed the following results of the stockholders' vote at the Annual Meeting:

> [Proposal No. 1] The first matter was the election of the members of the Board of Directors. All of the nominees received a majority of the votes cast and were elected and the tabulation of the votes (both in person and by proxy) was as follows:
>
> | Nominees for Directors | For | Withheld |
> | --- | --- | --- |
> | Stephen G. Berman | 18,277,195 | 234,024 |
> | Zhao Xiaoqiang | 18,328,914 | 182,305 |
> | Joshua Cascade | 18,291,892 | 219,327 |
> | Carole Levine | 18,291,900 | 219,319 |
> | Alexander Shoghi | 18,187,192 | 324,027 |
>
> There were 6,840,338 broker held non-voted shares represented at the Meeting with respect to this matter.
>
> [Proposal No. 2] The second matter upon which the stockholders voted was the proposal to approve an amendment to our Amended and Restated Certificate of Incorporation to implement a reverse stock split

9

of our outstanding common stock in the ratio of 1-for-10. The tabulation of the votes (both in person and by proxy) was as follows:

| For | Against | Abstentions |
|---|---|---|
| 21,880,949 | 3,216,585 | 254,023 |

There were no broker held non-voted shares represented at the Meeting with respect to this matter.

[Proposal No. 3] The third matter upon which the stockholders voted was the proposal to ratify the appointment by the Board of Directors of BDO USA, LLP, as our independent certified public accountants for 2020, which matter was approved. The tabulation of the votes (both in person and by proxy) was as follows:

| For | Against | Abstentions |
|---|---|---|
| 24,260,369 | 856,370 | 234,818 |

There were no broker held non-voted shares represented at the Meeting with respect to this matter.

[Proposal No. 4] The fourth matter upon which the stockholders voted was an advisory vote to approve the compensation of our named executive officers, which matter was approved. The tabulation of the votes (both in person and by proxy) was as follows:

| For | Against | Abstentions |
|---|---|---|
| 16,229,056 | 2,220,374 | 61,789 |

There were 6,840,338 broker held non-voted shares represented at the Meeting with respect to this matter.

33. As the above results show, Proposal No. 2 received 21,880,949 votes by stockholders in favor. Based on these results, the Board deemed the Amendment approved, having purportedly surpassed the 17,774,025 votes needed for approval.

34. However, contrary to the representations in the Proxy, the Company was able to garner enough votes in favor of Proposal No. 2 only by permitting brokers to vote for beneficial owners who had not submitted voting instructions to their brokers.

35. As the voting results show, stockholders holding 18,511,219 shares cast their votes "For" or "Withheld" their votes for each director in Proposal No. 1. In Proposal No. 4, stockholders holding 18,511,219 shares either voted "For," "Against," or in "Abstention" for the proposal. For both Proposal Nos. 1 and 4, the 8-K noted an additional 6,840,338 shares comprised beneficial owners who failed to provide their brokers with voting instructions on how to vote their shares, or "broker held non-voted shares." In accordance with the representations in the Proxy, Proposal Nos. 1 and 4 were classified as "non-routine matter[s]," and when beneficial owners did not provide voting instructions for these matters, the 8-K listed the 6,840,338 shares as broker non-votes under Proposals Nos. 1 and 4.

36. Consistent with the representations in the Proxy, these 6,840,338 shares that failed to submit voting instructions voted on the only "routine" matter disclosed in the Proxy, Proposal No. 3 (the ratification of the appointment of BDO as the

Company's independent auditor), as confirmed by the fact that the 8-K noted that "[t]here were no broker held non-voted shares represented at the [Annual Meeting] with respect to this matter" for Proposal No. 3.

37. However, contrary to the representations in the Proxy, the 6,840,338 shares held by stockholders who did not submit voting instructions to their brokers were voted by the brokers in favor of Proposal No. 2. This is evidenced by the fact that there were "no broker held non-voted shares" with respect to Proposal No. 2.

38. Accordingly, stockholders who thought they were voting "Against" Proposal No. 2 by not submitting voting instructions to their broker – because they were told as much by the Board in the Proxy – instead had their failure to vote treated as an affirmative vote "For" Proposal No. 2.

39. Had brokers not been permitted to vote uninstructed shares in favor of the Amendment, as represented in the Proxy, the voting results for Proposal No. 2 would have been as follows:

| For | Against | Abstentions |
| --- | --- | --- |
| 15,040,611 | 3,216,585 | 254,023 |

*There were 6,840,338 broker held non-voted shares represented at the Meeting with respect to this matter.*

Accordingly, with only 15,040,611 affirmative votes, Proposal No. 2 would not have received the affirmative vote of at least a majority of the Company's

outstanding stock – i.e., 17,774,025 affirmative votes. In other words, had the votes actually been counted in a manner consistent with the representations in the Proxy, Proposal No. 2 would have failed.

40. On June 13, 2020, Plaintiff, through his counsel, sent a letter to the Board explaining these facts and demanding that the Board deem the approval of Proposal No. 2 ineffective. The Board ignored Plaintiff's demand.

41. Instead, on July 9, 2020, the Company filed an 8-K with the SEC (the "July 9 8-K") and disclosed that the Company filed the Amendment with the Secretary of State of Delaware on July 6, 2020, and that the Company would implement a 1-for-10 reverse stock split, effective 5:00 P.M EDT on July 9, 2020 (the "Reverse Stock Split").

42. As a result of the Reverse Stock Split, every ten shares of the Company's common stock were combined into one share of common stock. The Company's issued and outstanding shares were reduced from 42,395,782 shares to 4,239,578.

43. On July 9, 2020, the Company's common stock closed at $0.71 per share, or $7.10 per share, as adjusted for the Reverse Stock Split.

44. Following the Reverse Stock Split, the Company's stock price has dropped significantly, closing at $6.52 per share on July 10, 2020, and closing at $4.83 per share as of November 9, 2020.

## CLASS ACTION ALLEGATIONS

45. Plaintiff brings this action (i) individually and (ii) on behalf of a class of Jakks common stockholders as of July 9, 2020, the date that the Company implemented the Reverse Stock Split (the "Class"). Excluded from the Class are the Individual Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns, and any entity in which the Individual Defendants have or had a controlling interest during the Class period.

46. This action is properly maintainable as a class action.

47. The Class is so numerous that joinder of all members is impracticable. Jakks has thousands of public stockholders scattered across the United States.

48. There are questions of law and fact that are common to the Class and that predominate over questions affecting any individual Class members. The common questions include the validity of the stockholder vote on the Amendment, whether the Individual Defendants breached their fiduciary duty to stockholders by filing the Amendment with the Secretary of State of Delaware and implementing the Reverse Stock Split, and whether any shares of Jakks Pacific common stock have been issued invalidly.

49. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of other members of the Class, and Plaintiff has the same

interests as other members of the Class. Plaintiff is an adequate class representative and will fairly and adequately protect the interests of the Class.

50. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications and could establish incompatible standards of conduct for Defendants. Adjudication with respect to individual members of the Class could also as a practical matter be dispositive of the interests of the other members not parties to the adjudication or substantially impair their ability to protect their interests.

51. Defendants have acted and refused to act on grounds that apply generally to the Class, and are causing injury to the Class, such that final injunctive or declaratory relief is appropriate on behalf of the Class as a whole.

52. The questions of law and fact common to the members of the Class predominate over any questions affecting only its individual members, such that a class action is superior to any other available method for fairly and efficiently adjudicating the controversy.

## COUNT I
## Breach of Fiduciary Duty
### (Against Individual Defendants)

53. Plaintiff incorporates by reference and realleges each and every allegation made above as if fully set forth herein.

54. Each of the Individual Defendants owed Jakks stockholders fiduciary duties.

55. The Individual Defendants breached their fiduciary duties by calculating the votes at the Annual Meeting in a manner contrary to the representations made in the Proxy, deeming the Amendment approved as a result of such calculation, filing the Amendment with the Secretary of State of Delaware, implementing the Reverse Stock Split, and refusing to take remedial action after receiving Plaintiff's letter.

56. As a result, Plaintiff and the Class members are being, and will continue to be, harmed.

57. Plaintiff and the Class have no adequate remedy at law.

## COUNT II
## Declaratory Judgment
### (Against Defendants)

58. Plaintiff incorporates by reference and realleges each and every allegation made above as if fully set forth herein.

16

59. Under the Declaratory Judgment Act (the "Act"), "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. According to the Act, "[a]ny such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." *Id.*

60. There is an actual, substantial, justiciable, and immediate controversy about whether the Company's stockholders validly approved the Amendment, whether the Defendants improperly filed an Amendment with the Secretary of State of Delaware, and whether the Defendants improperly implemented the Reverse Stock Split.

61. A declaratory judgment regarding these issues will terminate the controversy and clarify conclusively the legal rights, statuses, relations, and obligations of the parties.

62. Based on the allegations set forth above, Plaintiff and the Class are entitled to a judicial declaration that the Amendment was not validly approved by the Company's stockholders, that the Amendment was improperly filed with the Secretary of State of Delaware, and that the Company improperly effectuated the Reverse Stock Split.

## **PRAYERS FOR RELIEF**

WHEREFORE, Plaintiff requests entry of an order as follows:

A. Certifying this action as a class action, Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel;

B. Declaring that the Amendment was not validly approved by the Company's stockholders, that the Amendment was improperly filed with the Secretary of State of Delaware, and that the Company improperly effectuated the Reverse Stock Split;

C. Declaring that the Individual Defendants breached their fiduciary duties to the Class;

D. Awarding Plaintiff and the Class the amount of damages they sustained as a result of the Individual Defendants' breaches of fiduciary duties;

E. Awarding Plaintiff the costs and disbursements of this action, including reasonable allowance of fees and costs for Plaintiff's attorneys, experts, and accountants; and

F. Granting Plaintiff such other and further relief as the Court may deem just and proper.

Dated: November 10, 2020

Of Counsel:

Steven J. Purcell
Douglas E. Julie
Robert H. Lefkowitz
PURCELL JULIE & LEFKOWITZ LLP
708 3rd Avenue, 6th Floor
New York, New York 10017

Respectfully submitted,

FARNAN LLP

/s/ Michael J. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiff*